UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCIA LEE,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED AIRLINES, INC., et al.,<br><br>*Defendants*. | Civil Action No. 18-14772<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendant United Airlines, Inc.'s ("Defendant" or "United") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, ECF No. 92. Plaintiff Marcia Lee ("Plaintiff" or "Lee") opposes the Motion. ECF No. 95. For the reasons explained below, the Motion is **GRANTED**.

**I. BACKGROUND**[1]

This matter arises out of Defendant's allegedly retaliatory actions taken after Plaintiff objected to the quality of food products being disbursed to United passengers. See Second Amended Complaint ("SAC") ¶ 2, ECF No. 28. Plaintiff seeks relief for (1) violations of the New Jersey Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1, et seq. ("CEPA"); (2) violations of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, et seq. ("LAD"); and (3) material contract breach. Id. ¶ 1. Following limited discovery, Defendant brings this

---

[1] The Court draws the following facts from Defendant's Statement of Undisputed Material Facts ("Def. SOMF"), ECF No. 92.2, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl. RSOMF"), ECF No. 98, Plaintiff's Counter-Statement of Undisputed Material Facts ("Pl. SOMF"), ECF No. 99, and Defendant's Response to Plaintiff's Counter-Statement of Undisputed Material Facts ("Def. RSOMF"), ECF No. 101.1, as well as the relevant record. Disputes of fact are noted.

motion contending that Plaintiff is not entitled to bring claims under CEPA and LAD as an out-of-state employee, and that Plaintiff's contract claim fails as a matter of law.

### A. Facts

Prior to her employment with United, Plaintiff was employed as an adjunct professor at Northeastern University in Boston, Massachusetts and as a Senior Food and Drug Investigator for the Commonwealth of Massachusetts' Department of Public Health. Def. SOMF ¶ 3.[2] In early February 2017, Plaintiff was approached by a friend, Alisia Atwater ("Atwater"), the Director of Regulatory Affairs at United, to hire Plaintiff to address food safety issues at United. Pl. SOMF ¶ 8; Def. SOMF ¶ 41. At this time, Plaintiff owned homes in Maine and Massachusetts, but testified that she was living in Mountainside, New Jersey in a home that she rented from a friend. Def. SOMF ¶¶ 1-2.[3]

On February 18, 2017, Plaintiff submitted an application for employment with United for the position of Senior Manager-Food Safety. Id. ¶ 5.[4] The job posting for the Senior Manager-Food Safety position listed the primary location as Chicago, Illinois and contained a

---

[2] Plaintiff explains that although she worked for the Commonwealth of Massachusetts and Northeastern University, neither job required her to report to work in person in Massachusetts. Pl. RSOMF ¶ 3.

[3] Plaintiff clarifies that she has a "residential leasehold interest" on the Mountainside, New Jersey property, her house in Massachusetts was under renovation for the purpose of selling it, and her house in Maine was utilized as a summer rental property. Pl. RSOMF ¶ 1.

[4] Plaintiff contends that she submitted this application "as a formality," as Atwater had already told her that she had been hired "without going through the formal United process." Pl. SOMF ¶¶ 9, 11. Despite having participated in fulsome discovery on the issue of contract formation, however, Plaintiff provides no evidence that she had already begun to work for United in the Senior Manager-Food Safety position prior to applying for this job. Instead, Plaintiff stated in her deposition that she had been performing services "free of charge" for Atwater as a food safety specialist since 2016. Deposition Transcript of Plaintiff Marcia Lee ("Pl. Dep.") at 57:2-23, Certification of Robin H. Rome ("Rome Cert.") Ex. A, ECF No. 92.4.

Because the Court need not credit Plaintiff's bald assertions, unsupported by record evidence, Plaintiff's contention that she had been hired prior to formally applying does not create a dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (explaining that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading").

verification indicating that the position was an at-will employment opportunity. Id. ¶¶ 8-9.[5] On March 2, 2017, Robert James ("James"), a recruiter at United, emailed Plaintiff confirming her verbal acceptance of United's offer. Id. ¶ 14. On March 4, 2017, Plaintiff formally accepted the offer, after negotiating for a signing bonus related to her impending move to Chicago. Id. ¶¶ 15-16; see also Rome Cert. Ex. G at D001016 (Plaintiff stating in email exchange with James that she was requesting a bonus associated with "the cost of living index for the Chicago area"). The following day, Plaintiff executed United's offer letter for the Senior Manager-Food Safety position. Def. SOMF ¶ 17. The offer letter again verified that Plaintiff would be expected to relocate to her "new work location" within one year of beginning her job and that the employment opportunity was at-will. Id. ¶¶ 17-18; see also Rome Cert. Ex. D. Although Plaintiff now disputes the fact that relocation to Chicago was a condition of her employment, Pl. RSOMF ¶¶ 14-16, she acknowledged in emails to James at the time that she understood United's relocation policies and was planning to move Chicago. See, e.g., Rome Cert. Ex. G at D001015 (in negotiating with Rome about start dates, writing: "I do wish to inquire as to any flexibility in the start date since I have less then [sic] 2 weeks to try to organize the move from Plymoth, Ma [sic] and find living arrangements for my daughter and our pets in the Chicago area.").

On March 9, 2017, Plaintiff was initially contacted by NuCompass Mobility Services, Inc. ("NuCompass"), a relocation company, to help with her relocation to Chicago. Def. SOMF ¶¶ 24-25, 30.[6] Plaintiff visited Chicago with her daughter in March 2017. Id. ¶ 25. Although

---

[5] Plaintiff states that she "never saw, had access to, or referenced that alleged 'United[ ] job posting' during and/or throughout her employment negotiations with United (and/or at any time thereafter)." Pl. RSOMF ¶¶ 8-9. This is a curious contention, given that Plaintiff admits that she applied for the Senior Manager-Food Security position. Pl. SOMF ¶ 11. Regardless, even taking this contention as true, it does not create a material dispute of fact, because Plaintiff executed an offer letter with United, which spells out these identical terms of employment. See Rome Cert. Ex. D.

[6] Plaintiff repeatedly contends that she understood "new work location," as defined in her offer letter, to mean New Jersey and not Chicago, so presumably understood NuCompass to be supporting her move to New Jersey. Pl. RSOMF ¶¶ 24-25, 30. In support, Plaintiff cites her own certification submitted to the Court. This contention is contradicted

3

Plaintiff testified that after this weekend trip, she decided that she was not going to relocate to Chicago, id. ¶ 35; Pl. SOMF ¶ 15, Plaintiff continued to communicate with NuCompass until September 2017 about her relocation, Def. SOMF ¶ 39.[7] On September 3, 2017, Plaintiff notified NuCompass that her relocation was "on hold." Id. ¶ 40.

Plaintiff's job duties as Senior Manager-Food Safety required her to travel to United's kitchen locations in Houston, Texas, Honolulu, Hawaii, Cleveland, Ohio, Newark, New Jersey, and Denver, Colorado, as well as various vendors throughout the country to conduct audits. Id. ¶¶ 50-51. Plaintiff flew to the Newark kitchen on ten occasions and expensed hotels in New Jersey on four occasions. Id. ¶¶ 52-54.[8] Moreover, in her deposition, Plaintiff stated that she spent up to ten days per month working in the Newark, New Jersey kitchen. Pl. Dep. at 225:6-14. That said, while employed at United, Plaintiff had a cubicle in United's headquarters in Willis Tower in Chicago, Illinois, Def. SOMF ¶ 46,[9] and Plaintiff used an email signature indicating that she was based out of the Chicago office, id. ¶ 48. Additionally, Plaintiff's paystubs reflect her primary

---

by email exchanges between Plaintiff and James, as well as emails between NuCompass representative Cathy Lippe ("Lippe") and Plaintiff. See Rome Cert. Ex. I at D00196 (subject line of emails between Lippe and Plaintiff: "Relocation to Chicago, IL"); see also id. Ex. J (emails making clear that Plaintiff understood NuCompass to be assisting in her move to Chicago).

[7] Plaintiff does not dispute that she had conversations with NuCompass surrounding her move to Chicago but rather states that she did not begin looking for housing in Chicago until May or June of 2017, after she had made CEPA-protected complaints which resulted in the harassment and retaliation at issue in the instant action. Pl. SOMF ¶¶ 19-20; Pl. RSOMF ¶ 39. This is belied by the record, which demonstrates that initial conversations between NuCompass and Plaintiff about her move to Chicago began on March 9, 2017. See Rome Cert. Ex. I.

[8] Plaintiff contends that the travel records kept by United and relied upon in United's Statement of Undisputed Material Facts are incomplete, as they do not document Plaintiff's travel by means other than United flights. Pl. RSOMF ¶ 53.

[9] As to this fact—and to a host of others—Plaintiff generally states that she "disputes the stated facts and disputes the materiality of them, because the statement presents an inaccurately incomplete account of the material relevant information." Pl. RSOMF ¶ 46. In her deposition, however, Plaintiff admits to having used a cubicle in United's Chicago office, and agrees that she had personal photographs and books in that cubicle. Pl. Dep. at 130:13-131:7. In fact, when Plaintiff resigned from her job with United, she had four boxes of items from the cubicle in Chicago shipped to her. Id. at 132:2-133:12. The Court finds no basis to conclude that the statement recited by United is in any way incomplete or inaccurate.

work location as Chicago and her tax withholdings for Illinois and Massachusetts. Id. ¶¶ 58, 62.[10] For tax year 2017, Plaintiff filed a federal income tax return as well as state income tax returns in Illinois and Massachusetts. Id. ¶¶ 68-70.[11]

According to Plaintiff, in May or June of 2017, Plaintiff began to make complaints about United's food handling safety, which she alleges led Atwater to retaliate against her by forcing her to relocate to Chicago. Pl. SOMF ¶ 19; SAC ¶¶ 98-99. Ultimately, in an email dated September 8, 2017, Plaintiff resigned from her position at United, allegedly because Plaintiff felt she was being pressured to ignore the food safety issues she was uncovering. Def. SOMF ¶ 76; SAC ¶¶ 105-12. Plaintiff was paid through September 25, 2017, but her last day of work was September 11, 2017. SAC ¶¶ 113-14; Def. SOMF ¶ 77. Following her employment with United, Plaintiff filed for unemployment compensation benefits in Massachusetts. Def. SOMF ¶ 78.

**B. Procedural History**

Plaintiff brought the instant action on September 10, 2018 in Superior Court of New Jersey, Essex County. See ECF No. 1. On October 9, 2018, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. See id. On October 26, 2019, Defendant moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that (1) the Complaint did not state a cause of action under CEPA or LAD because

---

[10] Plaintiff states that she never received or reviewed paystubs during her employment with United. Pl. RSOMF ¶¶ 58, 62. This is of no import. The paystubs provided by United in discovery reflect the veracity of Defendant's statement of fact. Rome Cert. Ex. N.

Plaintiff also contends that these paystubs are not "likely to be admissible at trial, due to its nature as double and/or triple hearsay." Pl. RSOMF ¶¶ 58, 62. The Court struggles to see how that is the case, as United could, no doubt, authenticate these documents as business records under Federal Rule of Evidence 801(6). See also Def. Reply Mem. at 3-6, ECF No. 101 (chart listing each exhibit and how the exhibit has been authenticated).

[11] Plaintiff admits that she filed state income tax returns in Illinois and Massachusetts from 2017, but also states that she "attempted to file and pay state income taxes with New Jersey for calendar year 2017." Pl. RSOMF ¶¶ 68-70. In support, Plaintiff cites to her deposition, whereby Plaintiff appears to state that she thought she had filed income taxes with New Jersey, but after speaking with her accountant could not find any record evidence of such. Pl. Dep. 270:8-272:15.

5

Plaintiff was not employed in New Jersey; (2) the CEPA claim was barred by the applicable statute of limitations; and (3) the contract cause of action fails as a matter of law because Plaintiff was an at-will employee. ECF No. 4. Defendant subsequently filed a sur-reply requesting "that the Court permit the parties to engage in limited discovery that is narrowly tailored to the issue of whether Plaintiff's employment was based out of New Jersey or elsewhere." ECF No. 22, at 5 n.5. On May 30, 2019, the Court denied Defendant's motion to dismiss without prejudice, allowing for limited discovery on the situs of Plaintiff's employment, as well as the breach of contract and statute of limitation issues raised by Defendant. ECF No. 26.

After obtaining leave from the Court, Plaintiff filed the Second Amended Complaint on June 5, 2019, alleging violations of CEPA (Count I) and LAD (Counts II and III), as well as material contractual breach (Count IV). ECF No. 28. Following limited discovery, Defendant brought the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on November 25, 2020, again contending that Plaintiff was not a New Jersey employee and that she was an at-will employee and thus failed to state a claim for breach of contract. ECF No. 92.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

The Court construes all facts and inferences in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)) (internal quotation marks omitted).

### III. ANALYSIS

United seeks dismissal of the SAC because Plaintiff was not a New Jersey employee and because Plaintiff was an at-will employee. The Court agrees and will address each argument in turn.

#### A. Plaintiff was not Employed in New Jersey

The SAC alleges that United violated CEPA and LAD by unlawfully retaliating against and harassing Plaintiff when she raised concerns regarding the safety of United's food services. SAC ¶¶ 119-43. The Court concludes that Plaintiff is not a New Jersey employee and, therefore, Plaintiff cannot pursue claims under CEPA and LAD.

In determining whether a Plaintiff can pursue claims under CEPA or LAD, the key question is the situs of Plaintiff's employment. See Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 657 (D.N.J. 2008) ("New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey.") (quoting Weinberg v. Interep Corp., No. 05-5458, 2006 WL 1096908, at *6 (D.N.J. Apr. 26, 2006)); Norris v. Harte-Hanks, Inc., 122 F. App'x 566, 569 (3d Cir. 2004) ("[I]t is well-established in New Jersey that [CEPA] claims of a New Jersey resident, relating to out-of-state employment, are governed by the law of the state in which that New Jersey

7

resident was employed.") (quoting Brunner v. AlliedSignal, Inc., 198 F.R.D. 612, 614 (D.N.J. 2001)).

New Jersey is an individual's place of employment if New Jersey has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Satz v. Taipina, No. 01-5921, 2003 WL 22207205, at *15 (D.N.J. Apr. 15, 2003) (quoting Blakey v. Cont'l Airlines, Inc., 164 N.J. 38, 65 (2000)). "Mere, occasional contact with New Jersey as part of a plaintiff's employment is insufficient to turn those visits into plaintiff being based in New Jersey for employment purposes." Schneider v. Sumitomo Corp. of Am., No. 09-5094, 2010 WL 2521774, at *2 (D.N.J. June 14, 2010) (citations and quotation marks omitted). In other words, "it is where Plaintiff worked, rather than where Defendant was located or where Plaintiff occasionally traveled to for business, that is significant." Mirabella v. Oasis Foods Co., No. 12-6218, 2014 WL 7272955, at *4 (D.N.J. Dec. 16, 2014).

Here, the undisputed facts establish that United employed Plaintiff in Illinois and not in New Jersey. It is undisputed that Plaintiff submitted an application for employment with United for the position of Senior Manager-Food Safety, which listed the primary location as Chicago, Illinois. See Rome Cert. Ex. C.; Pl. SOMF ¶ 11. This job posting says nothing about employment opportunities in New Jersey. Similarly, Plaintiff's paystubs and tax returns during the relevant period reflect that Plaintiff was an employee in Illinois. See Rome Cert. Ex. N. Again, these documents reflect no tax withholdings and thus no employment in New Jersey. Additionally, Plaintiff used an email signature reflecting her work location in Chicago and had a cubicle with personal belongings in Chicago. Def. SOMF ¶¶ 46, 48.[12] Finally, when Plaintiff resigned from

---

[12] This fact is particularly compelling since some of United's New Jersey-based employees had email signatures reflecting their work location in New Jersey. Compare Rome Cert. Ex. L at LEE V. UNITED000143 with id. at LEE V. UNITED000210.

8

her position with United, she filed for unemployment benefits not in New Jersey, but in Massachusetts. See SOMF ¶¶ 78-79; see also Peikin, 576 F. Supp. 2d at 658 (considering the fact that plaintiff received employment benefits in Pennsylvania in determining that plaintiff was not an employee in New Jersey).

Plaintiff's arguments to the contrary are unconvincing. First, Plaintiff contends that she was domiciled in and a resident of New Jersey at the time she was employed by United. See Pl. SOMF ¶¶ 1-4, 7. This fact alone, however, does not establish that she was employed in New Jersey, as NJLAD and CEPA protect New Jersey employees, not New Jersey residents. See, e.g., Norris, 122 F. App'x at 569 ("And [plaintiff's] New Jersey residence does her little good—the record demonstrates that she was employed in Pennsylvania, and 'it is well-established in New Jersey that claims of a New Jersey resident, relating to out-of-state employment, are governed by the law of the state in which that New Jersey resident was employed.'") (quoting Brunner, 198 F.R.D. at 614).

Second, Plaintiff repeatedly states that it was her perception that her position with United was based in New Jersey and moving to Chicago was not a condition of her employment. See Pl. SOMF ¶¶ 13; Pl. RSOMF ¶¶ 17, 20-25. That said, Plaintiff is unable to point to any evidence in the record consistent with her perception. Standing alone, Plaintiff's subjective belief regarding where she was employed does not create an issue of material fact sufficient to defeat summary judgment. See Shann v. Atl. Health Sys., No. 12-4822, 2017 WL 5260780, at *10 (D.N.J. Nov. 13, 2017) (stating that a plaintiff's subjective belief "without factual support . . . is insufficient to create a genuine issue of material fact").

Third, Plaintiff relies heavily upon the fact that one of the United kitchens that she audited and ultimately reported as having unlawful food safety practices was located in Newark, New

9

Jersey. Pl. SOMF ¶ 24; Affidavit of Marcia Lee ("Lee Aff.") ¶¶ 23-26, ECF No. 96.1. But neither party disputes that Plaintiff was required to perform some work in New Jersey. And the mere fact that Plaintiff performed occasional work in New Jersey—a maximum of ten workdays per month, Pl. Dep. at 225:6-14—among other places does not constitute significant enough contacts with New Jersey for it to be considered her place of employment. See Peikin, 576 F. Supp. 2d at 657 (granting defendant's summary judgment on plaintiff's LAD claims because plaintiff was a Pennsylvania employee, despite the fact that Plaintiff performed 90% of her work in New Jersey and was a New Jersey resident); see also Pl. Dep. at 84:17-85:7; 87:5-15 (admitting that she performed similar roles in New Jersey, Colorado, Texas, Hawaii, Ohio, and California).

In sum, because Plaintiff was employed in Illinois as matter of law, she may not assert claims under LAD or CEPA. Summary judgment in favor of Defendant is warranted on Counts I-III.[13]

### B. Plaintiff's Breach of Contract Claim Fails as a Matter of Law

Count IV of the SAC contends that United breached a contract with Plaintiff by interfering with her ability to perform her job and ultimately forcing her to resign. See SAC ¶¶ 144-49. In her deposition, Plaintiff further clarified that the contract the SAC refers to is United's offer letter, executed by Plaintiff on March 3, 2017. Pl. Dep. at 91:6-17; see also Rome Cert. Ex. D. This offer letter, however, cannot serve as the basis for Plaintiff's breach of contract claim because it explicitly states that Plaintiff is an at-will employee who "may be terminated by United or the employee at any time with or without cause." Rome Cert. Ex. D at D001018. Courts have

---

[13] Plaintiff additionally argues that the evidence presented to the Court and relied upon by Defendant in its motion are inadmissible hearsay. As discussed above, supra n.10, Defendant has authenticated each document by filing affidavits from employees with personal knowledge of the veracity of the documents, see ECF Nos. 22.1, 22.3, 22.5, 22.7, 22.9, and further authenticated these documents at Plaintiff's deposition, see Def. Reply at 3-6.

consistently held that this type of clear at-will employment language prevents any implicit conditions of employment from forming the basis of a contract claim under New Jersey law. See Schneider, 2010 WL 2521774, at *5-7 (summarizing case law).

In rebuttal, Plaintiff first argues that her official employment with United began when Atwater recruited her—before Plaintiff received and executed the offer letter—and that Atwater never informed her that her employment with United was at-will. Even assuming that Plaintiff began working for United prior to executing the offer letter,[14] Plaintiff has failed to provide any evidence that the initial (presumably verbal) agreement with Atwater created a binding contract. For example, if Plaintiff was performing services "free of charge," (Pl. Dep. at 57:2-23, was there consideration to support the contract? What were the core terms of the contract? Was it for a defined period of time? Did the contract provide that Plaintiff could only be terminated for cause? No such evidence was presented to the Court.

Moreover, it is undisputed that Plaintiff ultimately applied for the Senior Manager-Food Safety position and executed the offer letter, and that both the application and letter clearly indicated that her employment was at-will. See Rome Cert. Ex. C at D00934; id. Ex. D at D001018. Plaintiff has therefore failed to meet her burden of establishing that an enforceable contract exists between the parties. See Nat'l Reprographics, Inc. v. Strom, 621 F. Supp. 2d 204, 222 (D.N.J. 2009) (applying New Jersey law, which requires a plaintiff to prove the existence of a valid contract as an element of a breach of contract claim).

Second, Plaintiff argues that the offer letter and other documents relied upon by United are hearsay and thus inadmissible at trial. As explained supra nn.10, 13, Defendant has authenticated

---

[14] As the Court explained supra n.4, Plaintiff's inability to point to any evidence that she began work in the Senior Manager-Food Safety role prior to her official application to and acceptance of the position defeats Plaintiff's argument that she was employed in such a role prior to March 2017.

each document by filing affidavits from employees with personal knowledge of the documents and further authenticated the veracity of the documents at Plaintiff's deposition. For all of these reasons, Plaintiff's breach of contract claim (Count IV) fails as a matter of law.

## IV. CONCLUSION

For the reasons contained herein, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order accompanies this Opinion.

**Dated**: June 29, 2021

                                               */s Madeline Cox Arleo*
                                               **HON. MADELINE COX ARLEO**
                                               **UNITED STATES DISTRICT JUDGE**